UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MEDI-WEIGHTLOSS FRANCHISING
USA, LLC, *et al.*,

       Plaintiffs,

v.                                      Case No. 8:11-cv-2437-T-30MAP

MEDI-WIEGHTLOSS CLINIC OF
BOCA RATON, LLC, *et al.*,

       Defendants.

_____/

### REPORT AND RECOMMENDATION

     Medi-Weightloss Franchising USA, LLC, Physician's Health Management, LLC, Medi IP Licensing, LLC, and Medi-Weightloss Clinics, LLC (collectively, "Medi") filed a verified complaint seeking preliminary and permanent injunctive relief as well as damages against Medi-Weightloss Clinic of Boca Raton, LLC ("Medi-Boca"), Dr. Eliot Slater ("Dr. Slater"), and Paul Martinez ("Dr. Martinez") (collectively, "Defendants") for alleged violations of various agreements, which include provisions related to non-use and non-disclosure of confidential information, non-competition, confidentiality, and post-termination IP restrictions, as well as violations relating to their trademarks and service marks (doc. 1, 2).  Amongst other relief, Medi seeks a preliminary injunction enjoining Defendants from continuing to operate a weightloss clinic in the same location as the former Boca Medi clinic in accordance with the non-compete terms in the parties' agreements, from disclosing or publishing Medi's confidential information, from using the word "Medi" in the name of any business or trade name for the business, from using the Medi-Program or Medi-System or any program confusingly similar to Medi's, from using any of Medi's proprietary or copyrighted

information, and from competing unfairly with Medi in any manner whatsoever.  In addition, Medi

seeks to have Dr. Slater discontinue his services with the weightloss clinic currently in operation at

the former Medic clinic.  Defendants deny any wrongdoing, claim the motion for preliminary

injunction is moot, and oppose the request (doc. 15).  After consideration, I recommend Medi's

motion for preliminary injunction be granted in part and denied in part.[1]

*A.  Background*

As a franchisor of weightloss clinic businesses, Medi entered into agreements with Dr.

Martinez and Medi-Boca allowing them to open and operate weightloss clinics utilizing the Medi

trademarks, products, practices, methods, information, and software (doc. 1, Exhs. A, B).

Specifically, in September 2007, Dr. Martinez entered into a Management Agreement and License

Agreement with Medi to run a Medi licensed business.  Subsequently, Dr. Martinez informed Medi

he needed relief from the obligations under these agreements, so Medi agreed to a partial waiver of

certain fees and a partial consolidation of other fees (*id.*, Exh. G).  When Medi-Boca became

delinquent on fees due Medi, Medi sent a letter to Dr. Martinez in June 2010 informing him of the

fees due, providing the time for curing any compliance defects, and addressing issues raised by Dr.

Martinez in a prior e-mail, including Dr. Martinez's statement that: "The way I look at it we have

two options.  We can negotiate a new system of fees or we can completely part ways and I can run

a weigh loss clinic completely separate from Medi Weightloss" (*id.*, Exh. H-1).  Following that, in

July 2010, Medi sent Medi-Boca and Dr. Martinez a Legal Notice of Default and Termination

informing them that their repeated failures to comply with the parties' agreements without a

---

[1]  The district judge referred the motion for preliminary injunction (doc. 2) for a report
and recommendation.  *See* 28 U.S.C. § 636 and Local Rule 6.01.

settlement agreement being reached led to termination of the parties' agreements as of that date (*id.*, Exh. H-2).

In August 2010, however, Medi-Boca and Dr. Martinez entered into a settlement agreement with Medi under which Medi-Boca agreed to convert its business relationship to a franchise, Medi agreed to waive some past due fees, and Medi-Boca and Dr. Martinez agreed to pay an amount due under a promissory note (*id.*, Exhs. I, J). Later that month, Dr. Martinez executed a franchise agreement and a principal owner guaranty with Medi on behalf of Medi-Boca for the operation of the Boca Medi Clinic (*id.*, Exhs. A, B). By entering into the franchise agreement, Medi-Boca and Dr. Martinez, as guarantor, explicitly agreed to be bound by confidentiality covenants,[2] post-

---

[2] As to confidentiality, the Franchise Agreement states, in part:

9.3 **Confidentiality Obligations**. You agree that your relationship with us does not vest in you any interest in the Confidential Information [as described in Section 9.1 of the Franchise Agreement] other than the right to use it in the development and operation of your Business, and that the use or duplication of the Confidential Information in any other business would constitute an unfair method of competition. You acknowledge and agree that the Confidential Information is proprietary, includes trade secrets belonging to us and is disclosed to you or authorized for your use solely on the condition that you agree, and you therefore do agree, that you:
    (a)    will not use the Confidential Information in any other business or capacity;
    (b)    will maintain the absolute confidentiality of the Confidential Information during and after the term of this Agreement; ...

                        ***

17.5 **Confidential Information**. You agree that, upon termination or expiration of this Agreement you will immediately cease to use any of our Confidential Information in any business or otherwise and return to us all copies of the Manuals and any other confidential materials that we have loaned to you.

termination trademark restrictions,[3] and non-competition restrictions[4] (*id.*, Exhs. A, B).  While

operating the Boca Medi Clinic, Med-Boca engaged the services of Dr. Slater.  Dr. Slater then

entered into a confidentiality/non-competition agreement for professional staff in which he, too,

agreed to be bound by essentially the same confidentiality covenants and non-competition

---

[3] Section 17.4 of the Franchise Agreement states, in relevant part:

17.4    **Marks**.  Upon the termination or expiration of this Agreement:

(a)    you may not directly or indirectly at any time or in any manner (except with respect to other MEDI-WEIGHTLOSS CLINICS ® Business you own and operate) identify yourself or any business as a current or former MEDI-WEIGHTLOSS CLINICS ® Business, or as one of our licensees or franchisees, use any Mark, any colorable imitation of a Mark or other indicia of a MEDI-WEIGHTLOSS CLINICS ® Businesses (sic) in any manner or for any purpose or utilize for any purpose any trade name, trade or service mark or other commercial symbol that indicates or suggests a connection or association with us; ...

[4] Section 17.6 of the Franchise Agreement states, in relevant part:

17.6    **Competitive Restrictions**.  Upon termination or expiration of this Agreement for any reason whatsoever (and you have not acquired a Successor Franchise), you and your owners agree that for a period of two (2) years commencing on the effective date of termination or expiration neither you nor any of your owners will have any direct or indirect interest (e.g. through a spouse or child) as a disclosed or beneficial owner, investor, partner, director, officer, employee, consultant, member, Manager, representative or agent or in any capacity in any Competitive Business operating:

(a)    at the Site, within the Market Area or Protected Area, or through the Practice;

(b)    within twenty-five (25) miles of the Site, the Market Area or Protected Area; or

(c)    within twenty-five (25) miles of any other MEDI-WEIGHTLOSS CLINICS ® Business or its Site, Protected Area, Market Area in operation or under construction on the later of the effective date of the termination or expiration. ...

restrictions (*id.*, Exh. E).[5]

During operation of the Boca Medi Clinic, both Dr. Martinez and Dr. Slater accessed the password-protected section of Medi's website that provides access to Medi's "Advantage" software and other confidential information. To access the protected section, both Dr. Martinez and Dr. Slater had to agree to Medi's terms of use agreement, which requires, among other things, that the individual accessing that portion of the site be bound by the terms of the franchise agreement and use the information only for an authorized use, and both individuals agreed to those terms. *See* doc. 1, Exhs. D, F.

Over the course of the next year, Medi-Boca again failed to make timely payments of fees due to Medi. As a result, Medi sent Medi-Boca and Dr. Martinez a legal notice of default detailing the past due fees and providing the time to cure (*id.*, Exh. K). In August 2011, Medi required Medi-Boca and Dr. Martinez to execute a mutual settlement and amendment of contracts agreement in which they agreed, among other things, to pay back a consolidated debt on a monthly basis, to immediate termination of the franchise agreement upon failure to make timely payments and to be subject to all post-termination restrictive covenants therein, and that, upon breach of the settlement agreement, the non-breaching party shall have no adequate remedy at law and will therefore be entitled to seek and obtain preliminary and permanent injunctive relief and is entitled to such relief upon the filing of an affidavit (*id.*, Exh. L).

Subsequently, Medi-Boca failed to perform under the August 2011 settlement agreement. Accordingly, Medi sent Medi-Boca and Dr. Martinez a letter informing them that Medi-Boca was

---

[5] Under the terms of Dr. Slater's confidentiality agreement, Medi was designated an intended third-party beneficiary giving it the right to take any and all legal action and file suit to enforce Dr. Slater's agreement (*id.*).

in default of the August 2011 settlement agreement and the franchise agreement and provided the time for compliance to cure the breach (*id.*, Exh. M).  Following that, Medi sent Medi-Boca a legal notice of termination informing it that the Franchise Agreement would be terminated at 5:01 p.m. on October 14, 2011, if payment of the past due amount was not made in full to Medi and that, after that time, Medi-Boca "must immediately completely de-identify, cease offering [Medi's] weight loss system, and shut down Boca's Medi-Weightloss Clinics® business" and that Medi-Boca was "bound by all post-termination and non-competition covenants in the Franchise Agreement" (*id.*, Exh. N).  Thereafter, on October 14, 2011, Medi terminated its franchise relationship with Medi-Boca and sent a final demand for payment to Dr. Martinez (*id.*, Exh. O).

After termination of the franchise relationship with Medi, Dr. Martinez opened and began operating another weightloss clinic in the same location as the prior Boca Medi Clinic.  *See id.*, Exhs. R, S.  As a result, Medi sent a letter to Dr. Martinez regarding his operation of a competing business and continued use of Medi's marks and expressed its intent to fully enforce its legal rights against Medi-Boca (*id.*, Exh. R).  In addition, Medi sent a letter to Dr. Slater informing him of his obligations under his confidentiality and non-competition provisions and also informing him of Medi's intent to enforce its legal rights against Medi-Boca (*id.*, Exh. P).

As a result of these actions, Medi filed its verified complaint alleging that Medi-Boca and Dr. Martinez breached the franchise agreements (Count I); Dr. Slater breached the Medical Director Agreement (Count II); Medi-Boca and Dr. Martinez breached the Mutual Settlement and Amendment (Count III); Dr. Martinez and Dr. Slater breached the USE Agreement and its USE Restrictions (Count IV); all Defendants misappropriated Medi's trade secrets (Count V); all Defendants engaged in common law unfair competition (Count VI); all Defendants committed

violations of the Lanham Act, including trademark infringement (Count VII), trademark dilution (Count VIII), and false designation of origin (Count IX); and Medi-Boca and Dr. Martinez owe Medi past due fees and charges as a result of the breach of the Boca Franchise Agreement and Mutual Settlement and Amendment (Count X). Accordingly, Medi seeks to enjoin Defendants from committing any further violations.

In response, Defendants deny they have been or are breaching any agreements entered into with Medi (doc. 15). According to Dr. Martinez, he has since ceased using or displaying any Medi products and has removed any Medi logos or signage from his new weightloss clinic but concedes he is operating a new weightloss clinic in the identical location as the Boca Medi Clinic and admittedly displayed items or signs with the Medi logo after the termination of the parties' agreements and franchise relationship in October. Dr. Martinez contends Medi's restrictive covenants are not enforceable and Medi does not have any protected proprietary or confidential information or trade secrets.

As for Dr. Slater, he contends he is no longer employed by or in any way affiliated with Medi-Boca or Dr. Martinez (doc. 15, Exh. 2). He asserts he owed a medical and ethical obligation to the patients under his care and who were receiving controlled substances and could not abruptly discontinue providing medical services to them without exposing them to withdrawal symptoms (*id.*). As of November 28, 2011, Dr. Slater resigned from his position as medical director for the Boca Medi Clinic and has not engaged in any further activity with respect to that clinic since that time (*id.*).

On December 13, 2011, the Court conducted a hearing on the motion for preliminary injunction and Defendants' response thereto. Both parties presented oral argument on the motion.

The matter is now fully briefed and ripe for review.

*B.  Standard of Review*

The decision to grant or deny a preliminary injunction is within the discretion of the district court.  *Carillon Importers, Ltd. v. Frank Pesce Int'l Group Ltd.*, 112 F.3d 1125, 1126 (11th Cir. 1997).  In determining whether a preliminary injunction should issue, the district court considers whether the moving party has demonstrated (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant unless the injunction issues; (3) the threatened injury to the movant outweighs the potential harm the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not disserve or be adverse to the public interest.  *MacGinnitie v. Hobbs Group, LLC*, 420 F.3d 1234, 1240 (11th Cir. 2005).  Since a preliminary injunction is an extraordinary and drastic remedy, a district court should not issue a preliminary injunction unless the movant clearly establishes the burden of persuasion as to each of the four prerequisites.  *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.,* 320 F.3d 1205, 1210 (11th Cir. 2003).

*C.  Discussion*

*1.  Likelihood of success on the merits*

The first factor in determining whether a preliminary injunction should issue is whether Medi can show a substantial likelihood it will prevail on the merits of its claims.  Based on the record before the Court, Medi has shown a substantial likelihood of success on the merits of its claims for breach of its competitive restrictions, breach of its confidentiality restrictions and covenants, and violations involving the use of its intellectual property.

*a.  competitive restrictions*

Section 542.335(1), Florida Statutes, permits the enforcement of contracts restricting or

prohibiting competition during or after the term of the restrictive covenant so long as such contracts are reasonable in time, area, and line of business.[6]  In Florida, restrictive covenants may only be enforced where, as here, the restrictive covenants are set forth in a writing signed by the person against whom enforcement is sought.  Fla. Stat. § 542.335(1)(a).  A party seeking to enforce a restrictive covenant must plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant and that the restriction is reasonably necessary to protect those legitimate business interests.  Fla. Stat. § 542.335(1)(b) and (c).  Legitimate business interests include trade secrets, as defined in Fla. Stat. § 688.002(4); valuable confidential business or professional information that otherwise does not qualify as trade secrets; substantial relationships with specific prospective or existing customers, patients, or clients; customer, patient, or client goodwill associated with a specific geographic location or specific marketing or trade area; and extraordinary or specialized training.  Fla. Stat. § 542.335(1)(b).  If the party seeking enforcement of the restrictive covenant establishes its *prima facie* case, the party opposing enforcement then has the burden of establishing the contractually specified restraint is overbroad, overlong or otherwise not reasonably necessary to protect the established legitimate business interests.   Fla. Stat. § 542.335(1)(c).  Florida law requires courts to construe restrictive covenants in favor of providing reasonable protection to all legitimate business interests established by the person seeking enforcement and prevents courts from employing any rule of contract construction requiring the

_____

[6]  The franchise agreement, the terms of use agreements, and the August 2011 settlement agreement dictate that Florida law shall govern, and, further, that all disputes arising out of the agreements shall be subject to the exclusive jurisdiction of the appropriate state and federal courts located in or near Hillsborough County, Florida under the franchise and settlement agreements and the state and federal courts located in or near Hillsborough County or Pinellas County, Florida under the terms of use agreements (doc. 1, Exhs. A, D, F, L).

court to construe a restrictive covenant narrowly, against the restraint or against the drafter where legitimate business interests have been established.  Fla. Stat. § 542.335(1)(h).  In determining the reasonableness of a restrictive covenant, courts should employ a balancing test to weigh the employer's interest in preventing competition against the oppressive effect on the employee. *Miller Mechanical, Inc. v. Ruth*, 300 So.2d 11, 12 (Fla. 1974).  If valid, a restrictive covenant may be enforced by, but not limited to, temporary or permanent injunctive relief.  Fla. Stat. § 542.335(1)(j).

In this instance, Medi has shown its restrictive covenants are reasonable as to time.  In Florida, a presumption exists that any restrictive covenant for six months or less is reasonable and for more than two years is unreasonable as to a former employee, agent or independent contractor. Fla. Stat. § 542.335(1)(d).  Similarly, any restrictive covenant for one year or less is reasonable and for more than three years is unreasonable as to a former distributor, dealer, franchisee, or licensee of a trademark or service mark. *Id.* Here, the competitive restrictions last for a period of two years commencing on the effective date of termination or expiration of the franchise agreement (doc. 1, Exh. A).  In Florida, two year terms have been found reasonable. *See, e.g., Graphic Business Systems, Inc. v. Rogge*, 418 So.2d 1084, 1087 (Fla. 2d DCA 1982) (finding agreement not to compete for two years after termination of employment within 75 miles of the city was reasonable in both time and area); *see also Tomasello, Inc. v. de Los Santos*, 394 So.2d 1069, 1072 (Fla. 4th DCA 1981) (finding an agreement not to compete for a period of two years following termination of employment facially reasonable).  Thus, the restrictive covenants are reasonable as to time.

Similarly, Medi has shown the competitive restrictive covenants are reasonable as to area and line of business.  The competitive restrictive covenants in the franchise agreements prohibit operation of a competitive business in any capacity at the site of the Boca Medi Clinic, within the

protected area, or through the practice; within twenty-five miles of the site of the Boca Medi Clinic; or within twenty-five miles of any other Medi-Weightloss Clinic business or its site, protected area, or market area in operation or under construction on the later of the effective date of the termination or expiration (*id.*, Exh. A). As to the geographic scope, the restrictive covenant is also reasonable. Indeed, Florida courts have upheld geographical restrictions covering a radius of 75 miles from the city where the defendant worked. *See Rogge*, 418 So.2d at 1087 (finding agreement not to compete for two years after termination of employment within 75 miles of the city was reasonable in both time and area). Moreover, the restrictions do not preclude Dr. Martinez or Dr. Slater from opening, operating or working in another weightloss clinic. The restrictions simply limit the geographic scope for a reasonable period of time. Accordingly, the restrictions as to geographic scope and line of business are reasonable.

Medi has also shown it possesses legitimate business interests which warrant protection. Specifically, Medi seeks enforcement of its competitive restrictions to protect its ability to sell its franchises; its right to ensure continued compliance with its agreements by other franchisees; its maintenance of the strength of the Medi-System and the value of its confidential information; its association of the locations where Dr. Martinez's competitive business is operating to Medi clinics; and the goodwill associated with its marks in the geographic region. Since Medi has established numerous legitimate business interests warranting protection, the burden now shifts to Defendants to show the competitive restrictions are overbroad, overlong or otherwise not reasonably necessary to protect the established legitimate business interests. Fla. Stat. § 542.335(1)(c); *see Orkin Exterminating Co. v. Martin*, 516 So.2d 970, 971 (Fla. 3d DCA 1987) (stating once a covenant not to compete has been shown to be facially reasonable, the burden shifts to the employee to show why

the covenant is unreasonable as applied to him). Defendants have failed to meet this burden.

In addition to establishing the enforceability of its competitive restrictive covenants, Medi has further established a strong likelihood of success on its claim that Medi-Boca and Dr. Martinez have breached those competitive restrictive covenants. "For a breach of contract claim, Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (applying Florida law). Medi has presented evidence which tends to show a likelihood of success on each of these elements. First, Medi has provided a valid franchise agreement, a guaranty signed by Dr. Martinez, and a valid settlement agreement signed by Dr. Martinez (doc. 1, Exhs. A, B, L). *See* Fla. Stat. § 542.335(1)(a) ("A court shall not enforce a restrictive covenant unless it is set forth in a writing signed by the person against whom enforcement is sought."). Second, Medi has shown Dr. Martinez has involved himself in a capacity with the operation of a competitive business thereby breaching both the franchise and settlement agreements (*id.*, Exhs. R, S). Finally, Medi has shown it has suffered and will continue to suffer damage resulting from the breach of the agreements in the form of unwarranted competition and violation of its agreements. Accordingly, Medi has established a substantial likelihood of success on its breach of its competitive restrictions claims as to Medi-Boca and Dr. Martinez.

Upon review of the assertions set forth in Dr. Slater's affidavit (doc. 15, Exh. 2), however, it appears the motion for preliminary injunction has become moot as to him. "A claim for injunctive relief may become moot if: (1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Reich v. Occupational Safety and Health Review*

*Comm'n*, 102 F.3d 1200, 1201 (11th Cir. 1997). Here, Dr. Slater simply continued his care of patients in accordance with his ethical and medical obligations. He ceased doing so and ceased having any affiliation with Medi-Boca or Dr. Martinez as of November 28, 2011. Further, Dr. Slater, who is 81 years old, asserts that he engaged in steps to disassociate himself from the litigation as soon as he learned of it (doc. 15, Exh. 2). Given Dr. Slater's assertions, it appears that there is no reasonable expectation that the alleged violation will recur.

### b. confidential information and intellectual property restrictions

Additionally, Medi has shown a substantial likelihood of success on its claims relating to breach of the confidential information and intellectual property restrictions as to Medi-Boca and Dr. Martinez.[7] Specifically, Medi asserts claims for misappropriation of trade secrets, common law unfair competition as to Medi's trademarks and service marks, and trademark infringement, trademark dilution, and false designation of origin under the Lanham Act. Indeed, the franchise agreement, terms of use agreement and operations manual all include provisions restricting the use of confidential and proprietary information, and the franchise agreement includes restrictions on the use of Medi's intellectual property (doc. 1, Exhs. A, D, F). As discussed above, Florida recognizes as legitimate business interests both trade secrets and valuable confidential business or professional information that otherwise does not qualify as trade secrets. In Florida, a trade secret consists of information that (1) derives independent economic value from not being generally known to and not

---

[7] Although Medi asserts counts V-IX against all Defendants, the allegations and supporting documentation do not show that Dr. Slater misappropriated or misused Medi's trademarks or service marks. Additionally, Medi failed to demonstrate how Dr. Slater violated the confidential information restrictions except, perhaps, in furtherance of his continuing obligation to serve the health needs of his patients for a temporary period post-termination. Accordingly, Medi has failed to show a substantial likelihood of success on its claims relating to breach of the confidential information and intellectual property restrictions as to Dr. Slater.

readily ascertainable by others who can obtain economic value from its disclosure or use and (2) is the subject of reasonable efforts to maintain its secrecy. *See* Fla. Stat. § 688.002(4). In an action involving alleged trade secrets, "the plaintiff bears the burden of demonstrating both that the specific information it seeks to protect is secret and that it has taken reasonable steps to protect this secrecy." *American Red Cross v. Palm Beach Blood Bank, Inc.* 143 F.3d 1407, 1410 (11th Cir. 1998) (applying Florida law). Information generally known or readily accessible to third parties does not qualify for trade secret protection. *Id.*

Further, in Florida, the elements of a common law unfair competition claim and a statutory trademark infringement claim are the same. *Tally-Ho, Inc. v. Coast Community College Dist.*, 889 F.2d 1018, 1025-26 (11th Cir. 1989). Namely, a plaintiff must show the following:

(1) The plaintiff first adopted and used a certain name (or mark or symbol or logo or design) in a certain market or trade area, as a means of establishing good will and reputation and to describe, identify or denominate particular services rendered or offered by it (or goods made or sold by it) and to distinguish them from similar services rendered or offered (or similar goods marketed) by others, and

(2) through its association with such services or goods the plaintiff's tradename (or mark, etc.) has acquired a special significance as the name of the services rendered (or goods marketed) by the plaintiff in its trade area because plaintiff's tradename (or mark, etc.)

(a) is inherently distinctive (fanciful, novel or arbitrary), or

(b) while generic, descriptive, or geographic, plaintiff's tradename (or mark, etc.) has, by actual usage, acquired in a certain trade area, a secondary, special or trade meaning as indicating, describing, identifying or denominating the plaintiff as the source of certain services (or goods), and

(3) the defendant has commenced, or intends to commence, the use of an identical or confusingly similar tradename (or mark, etc.) to indicate or identify similar services rendered (or similar goods marketed) by it in competition with plaintiff in the same trade areas in which the plaintiff has already established its tradename (or mark, etc.) and

(4) as a consequence of the defendant's action, or threatened action, customer confusion of

source or as to the sponsorship of the services (or goods) offered, or to be offered, by the defendant is probable (likely) or inevitable.

*Id.* at 1026 (quoting *Am. Bank of Merritt Island v. First Am. Bank and Trust*, 455 So.2d 443, 445-46 (Fla. 4th DCA 1984). Similarly, to prevail on a trademark infringement claim under the Lanham Act, a plaintiff must establish (1) it possesses a valid mark; (2) defendants used that mark; (3) defendants use of the mark occurred "in commerce;" (4) defendants used the mark in connection with the sale or advertising of any goods; and (5) defendants used the mark in a way likely to confuse consumers. *North Am. Medical Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1218 (11th Cir. 2008). Medi's false designation of origin and trademark dilution claims similarly focus on use of Medi's marks in commerce with the likelihood of confusion or dilution. *See* 15 U.S.C. § 1125(a) (false designation of origin) and 1125(c) (dilution).

As set forth more fully in its verified complaint and the franchise agreement, Medi has shown it possesses valuable confidential and proprietary information, trade secrets and other intellectual property warranting protection. *See* doc. 1 and Exh. A. Further, Medi has demonstrated it takes extraordinary efforts to maintain the secrecy of its trade secrets and confidential and proprietary information. Indeed, Medi required the Defendants to continually agree to maintain the confidentiality of the trade secrets and other confidential and proprietary information they received as a result of entering into the franchise agreement with Medi, the medical director confidentiality agreement, and the terms of use agreements. *See* doc. 1, Exhs. A, D, E, F. Medi has also shown that Medi-Boca and Dr. Martinez used forms, products, business cards and the program structure learned or obtained through the franchise agreements with Medi subsequent to termination of the agreements (*id.*, Exh. S). Furthermore, Medi-Boca and Dr. Martinez do not attempt to argue that Medi does not

have enforceable trademarks and service marks, and, in fact, openly admit to using Medi's marks in conjunction with their competing business after the termination of the parties' agreements in October 2011. Defendants similarly fail to dispute that the continued use of Medi's marks after termination of the parties' agreements and franchise relationship would likely cause customer confusion. Accordingly, Medi has shown it has a substantial likelihood of success on its claims relating to breach of the confidential information and intellectual property restrictions.

### 2. *Irreparable harm*

As a prerequisite to the entry of a preliminary injunction, Medi must also establish it will suffer irreparable harm unless the injunction issues. *MacGinnitie,* 420 F.3d at 1240; *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) ("Significantly, even if Plaintiffs establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper."). In the context of a preliminary injunction, the asserted irreparable harm must be actual and imminent rather than remote or speculative. *Siegel*, 234 F.3d at 1176. Florida law provides that "[t]he violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant." Fla. Stat. § 542.335(1)(j). This presumption is rebuttable. *Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1231 (11th Cir. 2009) (citing *JonJuan Salon, Inc. v. Acosta*, 922 So.2d 1081, 1084 (Fla. 4th DCA 2006). Defendants have failed to rebut the presumption of irreparable injury to Medi as a result of the violation of the restrictive covenants. As such, the Court may presume Medi suffers and will continue to suffer irreparable harm due to Defendants' violations of the enforceable restrictive covenants in the parties' agreements.

Notwithstanding, Medi has shown it has and will continue to suffer irreparable harm if a

preliminary injunction does not issue. Namely, Medi has shown that if a preliminary injunction does not issue, it will have to compete with former franchisees and employees who agreed not to engage in such competition, will lose the exclusivity and confidentiality of its proprietary and confidential information, will suffer dilution and confusion associated with its intellectual property as well as its products and services, and will not be able to enforce its agreements with other franchisees. Accordingly, Medi has met its burden as to the irreparable harm prerequisite.

Furthermore, as to the trademark claims, a strong showing of likelihood of confusion caused by trademark infringement may, by itself, constitute a showing of a substantial threat of irreparable harm. *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998). The Eleventh Circuit employs a seven-factor test for determining the likelihood of confusion between two marks. *Tana v. Dantanna's*, 611 F.3d 767, 774-75 (11th Cir. 2010) (setting forth the seven-factor test). Here, the factors way in favor of a finding that confusion by customers would be very likely given that Medi-Boca and Dr. Martinez used Medi's *actual* marks in continuing its weightloss clinic business. Although Medi-Boca and Dr. Martinez contend they started answering the phones without referencing Medi and informing customers they were no longer affiliated with Medi, they still utilized forms, products and signs which were emblazoned with Medi's marks in and around their clinic. Medi-Boca and Dr. Martinez also contend they have or are in the process of taking down all the Medi signs, meaning some of those signs remained for at least two months since termination of the parties' agreements and the franchise relationship, which likely caused customer confusion. Accordingly, having shown a strong likelihood of confusion because of Medi-Boca's and Dr. Martinez's use of Medi's actual marks, Medi has demonstrated it will suffer irreparable harm relating to its trademarks and service marks if a temporary injunction does not issue.

17

### 3. Balance of harm

Having demonstrated it will suffer irreparable harm, Medi must also establish that the threatened harm to it outweighs the harm a preliminary injunction may cause to Defendants. *MacGinnitie*, 420 F.3d at 1240. Here, the balance of harm tips in favor of Medi. Indeed, Medi seeks to enforce valid restrictive covenants and to preserve the integrity of its intellectual property to protect its legitimate business interests. As noted above, Medi currently suffers and will continue to suffer irreparable harm in the form of competition with former franchisees and employees who agreed not to engage in competition, loss of the exclusivity and confidentiality of its proprietary and confidential information, and likely dilution and confusion associated with its intellectual property as well as its products and services.

Indeed, Florida law provides that courts must not consider any individualized economic or other hardship that might be caused to the person against whom enforcement of valid restrictive covenants is sought. Fla. Stat. § 542.335(1)(g). Accordingly, the Court need not consider whether enforcement of Medi's valid restrictive covenants will require Defendants to cease operating their competitive business or otherwise cause them economic hardship. Thus, as Medi-Boca and Dr. Martinez have failed to show any other potential or actual harm they may suffer if a preliminary injunction issues, the balance of harm weighs in favor of granting a preliminary injunction to Medi.

### 4. Public interest

Finally, Medi must show the preliminary injunction would not disserve or be adverse to the public interest. *MacGinnitie*, 420 F.3d at 1240. Where an otherwise enforceable restrictive covenant exists, Florida law requires a court refusing enforcement of such provision on the basis that it violates public policy to specifically articulate the public policy violated. Fla. Stat. § 542.335(1)(i).

Further, Florida law requires the court to find the public policy requirements it articulates substantially outweigh the need to protect the legitimate business interests established by the person seeking enforcement. *Id*. In this instance, entry of a preliminary injunction would serve the public interest by enforcing valid contractual provisions freely entered into by the parties, by promoting stability and certainty in business relationships, by enforcing non-compete covenants permissible under Florida law, by preventing confusion as to a trademark owner's rights to control the use of its marks, and by protecting confidential, proprietary and trade secret information of businesses. Defendants do not refute those contentions; rather, they argue it is against the public interest for an injunction to issue without substantial evidence warranting such an extraordinary remedy and denial of Medi's motion will preserve the status quo until a final determination on the merits (doc. 15 at 22). As Medi has provided substantial evidence for a preliminary injunction, I find Defendants' blanket arguments to the contrary unavailing. Thus, Medi has demonstrated that entry of a preliminary injunction would in fact serve rather than be adverse to the public interest and would not violate any public policy. Accordingly, the public interest considerations support Medi's request for entry of a preliminary injunction.

### 5. Bond

Though Medi has met its burden as to the prerequisites for entry of a preliminary injunction, the Court may issue a preliminary injunction only if Medi provides security in an amount the Court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. Fed. R. Civ. P. 65(c).[8] The burden of establishing a rational basis for the

---

[8] S*ee also* Fla. Stat. § 542.335(1)(j) ("No temporary injunction shall be entered unless the person seeking enforcement of a restrictive covenant gives a proper bond, and the court shall not enforce any contractual provision waiving the requirement of an injunction bond or limiting the

amount of a proposed bond rests with the party seeking security. *Continental Group, Inc. v. KW Property Mgmt., LLC*, No. 09-60202-CV, 2009 WL 3644475, at *6 (S.D. Fla. Oct. 30, 2009) ("The 'burden is on the party seeking security to establish a rational basis for the amount of a proposed bond.'"). The determination of the amount of the injunction bond, however, lies within the sound discretion of the Court. *Carillon Importers, Ltd.*, 112 F.3d at 1127 ("The amount of an injunction bond is within the sound discretion of the district court) (citation omitted). Medi requests the Court set the bond at $10,000 while Defendants failed to address the issue in their response to the instant motion but argued at the hearing that $10,000 would not be a sufficient amount to compensate Defendants if they are wrongly enjoined. In view of the strength of Medi's case and the lack of any convincing argument by Defendants for a more onerous bond, I find Medi's proposed security sufficient.

### D. Conclusion

A preliminary injunction is an extraordinary remedy to be used only when a party carries its burden as to the four prerequisites. *Four Seasons,* 320 F.3d at 1210. In this instance, Medi has carried its burden as to all four prerequisites as to Medi-Boca and Dr. Martinez but not as to Dr. Slater. Accordingly, it is hereby

RECOMMENDED:

1.      Medi' motion for preliminary injunction (doc. 2) be GRANTED IN PART AND DENIED IN PART to the extent indicated below.

2.      Defendants Dr. Martinez and Medi-Boca be enjoined as follows:

    a.      Dr. Martinez and Medi-Boca, and their agents, servants, employees,

_____

amount of such bond.").

20

attorneys, and any other persons or entities who are in active concert or participation with them not operate a Competitive Business, as defined in the parties agreements, in the same location or within twenty-five miles from the Medi-Boca Clinic, located at 555 N. Federal Highway, Suites 18-20, Boca Raton, Florida 33432, or any other Medi-Weightloss Clinics Business;

b.　　Dr. Martinez and Medi-Boca, and their agents, servants, employees, attorneys, and any other persons or entities who are in active concert or participation with them not disclose or publish to any party, or copy or use for such party's own benefit or for the benefit of any other party, any of Medi's confidential information as defined in the parties agreements;

c.　　Dr. Martinez and Medi-Boca, and their agents, servants, employees, attorneys, and any other persons or entities who are in active concert or participation with them not use any of Medi's marks, and any signs, slogans, symbols, logos, advertising materials, forms, products and other items bearing Medi's marks;

d.　　Dr. Martinez and Medi-Boca, and their agents, servants, employees, attorneys, and any other persons or entities who are in active concert or participation with them not use Medi's trade secrets and confidential business information, including but not limited to the Medi-System and the know-how related to its use;

e.　　Dr. Martinez and Medi-Boca, and their agents, servants, employees, attorneys, and any other persons or entities who are in active concert or

participation with them not operate or do business under any name or in any manner that gives the general public the impression that Dr. Martinez or the Medi-Boca franchise are in any way connected with Medi or that Dr. Martinez or Medi-Boca have the right to use Medi's confidential information, Medi's marks or the Medi-System.

3.     Medi be required to provide a bond in the amount of $10,000.

4.     Medi's motion be denied as to Dr. Slater.

IT IS SO REPORTED at Tampa, Florida on January 3, 2012.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal.  28 U.S.C. § 636(b)(1).

cc:     The Honorable James S. Moody, Jr.
        Counsel of Record